United States District Court
Southern District of Texas
**ENTERED**
March 13, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUAN GABRIEL CISNEROS,           §
    Petitioner,                  §
                                 §
v.                               §        CIVIL ACTION NO. 1:16-cv-279
                                 §        CRIM. ACTION NO. 4:95-196-7
UNITED STATES OF AMERICA,         §
    Respondent.                  §

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On October 31, 2016, Petitioner Juan Gabriel Cisneros filed a motion to vacate, set aside or correct his sentence, in Criminal case number 95-196-7 ("the escape case")[1], pursuant to 42 U.S.C. § 2255. Dkt. No. 1.  In March 2019, after the Magistrate Judge incorrectly construed this new submission as a Rule 60(b) motion, the Fifth Circuit remanded the petition for further consideration. Dkt. No. 29.

On July 22, 2019, the Court held an evidentiary hearing on Cisneros's claims.  The parties have filed post-hearing briefs. Dkt. Nos. 55, 62, 68.

After reviewing the record and relevant case law, it is recommended that the petition be dismissed as untimely filed, or alternatively, denied as meritless.

## I. Background

### A. Indictment, Plea, and Sentencing

On August 16, 1995, a federal grand jury – sitting in Houston, Texas – returned an indictment against Cisneros and eight co-conspirators. U.S. v. Cisneros, Criminal No. 4:95-196-7, Dkt. No. 1 (J. Vela, presiding) (hereafter "CR 196" or "the escape case").  As relevant here, Cisneros was indicted, pursuant to 18 U.S.C. § 752(a), for one count of conspiracy to assist in the escape of federal prisoners. Id.  Cisneros was one of the prisoners

---

[1] Cisneros also has a § 2255 petition pending concerning his life sentence for drug-related charges in CR 94-181 ("the drug case"). Cisneros v. U.S., Civil Case 1:18-24.  Because the legal and procedural posture of that case is different than the instant petition, the drug case will be addressed in a separate report and recommendation; it is referenced here only to the extent that it bears on the instant petition.

– along with his brother – that the conspiracy planned to free from prison. <u>Id</u>.  During the planned escape period, Cisneros was being held in the Cameron County Jail post-conviction, but pending sentence, on drug-related charges. <u>U.S. v. Cisneros</u>, Criminal No. 1:94-181-12, Dkt. No. 152.  There were nine total defendants in the escape case, including Cisneros's wife and mother. CR 196, Dkt. No. 1.

On August 24, 1995, Cisneros was sentenced to life imprisonment in the drug case. U.S. v. Cisneros, Criminal Case 94-181, Dkt. No. 473.

Cisneros's first trial counsel in the escape case, G. Rudolph Garza, had a conflict of interest, requiring that he be recused from representing Cisneros. Dkt. No. 50, p. 30. Originally, Garza also represented Lesbia Irma Cisneros, who was a co-defendant and Cisneros's wife at the time. CR 196, Dkt. No. 11.  On September 8, 1995, Deborah Keyser moved to be substituted as sole counsel of record for Cisneros in the escape case. CR 196 Dkt. No. 80.

Keyser was a criminal defense attorney, who practiced almost entirely in state court. Dkt. No. 50, p. 57.  During the July 2019 hearing, she admitted that she had "very few" federal cases and estimated that she had represented clients in "two or three" federal cases before Cisneros. <u>Id</u>., pp. 57, 64.  She shared office space with James Stafford, who was the attorney handling Cisneros's direct appeal in the drug case. <u>Id</u>., p. 65.  Keyser "presumed" that Stafford referred the case to her. <u>Id</u>., p. 77.  Keyser recalled that Cisneros "needed somebody just at the last minute to come in and just kind of complete the plea." <u>Id</u>., p. 77. As discussed further below, Cisneros ultimately pled guilty to the escape charge. CR 196, Dkt. No. 264.

Cisneros testified, at the evidentiary hearing in July 2019, that when he first met Keyser — at the Harris County Jail prior to a pretrial hearing in the escape case — she "read the charges to me in the Indictment and she explained that she didn't know why the Federal Government took up the case that had to do with the escape attempt because it occurred while in the County with County officers." Dkt. No. 50, p. 17.

Later, Keyser discussed a possible plea bargain with Cisneros. Dkt. No. 50, p. 19. Cisneros's initial reaction was to reject any plea bargain, in part because he believed he

was legally innocent of the escape charge, given that it occurred while he was being held in county custody as opposed to federal custody. Id., p. 36.  Cisneros also believed he had "nothing to lose" by going to trial, because he had already received a life sentence in the drug case. Id., p. 19.

According to Cisneros, Keyser explained that if he was found guilty of escape at trial, he would receive a five-year sentence consecutive to the drug sentence, but if he pled guilty, he would receive a 24-month concurrent sentence. Dkt. No. 50, pp. 19-20.  Keyser allegedly went on to explain that the consecutive vs. concurrent distinction was important because if Cisneros's drug conviction was overturned on appeal, it would make the difference between leaving prison or having to complete the escape sentence. Id.

On the other hand, according to Keyser, Cisneros's chief concern "was to craft an agreement that best affected and protected his mother." Dkt. No. 50, p. 72.  Keyser explained that protecting his mother seemed to be Cisneros's "entire focus[,] because he already had a life sentence and so there wasn't a whole lot of negative things that could happen to him." Id., p. 73.

On September 12, 1995, a superseding indictment was returned by the grand jury. CR 196, Dkt. No. 132.  In the superseding indictment, Cisneros still faced the single count of conspiracy to escape. Id.  Cisneros's mother and wife had been charged in the superseding indictment for violating 18 U.S.C. § 3, as accessories after the fact who sought to "hinder and prevent" Cisneros's punishment in the drug case.  CR 196, Dkt. No. 132, pp. 7-8.  They faced a maximum possible sentence of 15 years, based upon the life sentence that Cisneros faced in the drug case. 18 U.S.C. § 3 ("if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years"); U.S. v. Velazquez, 246 F.3d 204, 218 (2d Cir. 2001).

Keyser rejected any claim that she had remarked, in her first client meeting, that the Government had no legal case against Cisneros. Dkt. No. 50, pp. 73-74.  She stated that she was "very careful about not trying to put false hope in people or anything like that. If I'd even thought it, I would have kept it to myself and just researched it independently."

3

Id., p. 74.  She described her overall client philosophy as "fun surprises are much better than pulling the rug out from under," so she tried to cultivate "low expectations." Id.

On September 22, 1995, Cisneros pled guilty to one count of conspiracy to assist in the escape of federal prisoners. CR 196, Dkt. No. 264.  In the plea agreement, Cisneros agreed to plead guilty and, in exchange, the Government agreed to "recommend the low end of the Sentencing Guideline Range and to dismiss the superseding indictment [as to Petitioner Cisneros] and agree to [Cisneros's] acceptance of responsibility." CR 196, Dkt. No. 204.  The written plea agreement made no mention of whether the sentence was to be consecutive or concurrent. Id.

Moreover, there is no transcript available of the re-arraignment hearing.   On February 6, 2020, the Court ordered a transcript of the re-arraignment and sentencing hearings. CR 196, Dkt. No. 329.  On March 11, 2020, Ebonee Mathis, the court reporter coordinator for the Southern District of Texas, filed declarations that any shorthand notes or recordings "are no longer available for production of a certified transcript" of either the rearraignment or sentencing hearings. CR 196, Dkt. Nos. 330, 331.  Mathis noted that the Judicial Conference of the United States "requires original court reporters' notes of proceedings and electronic sound recordings of arraignments, pleas, and proceedings in connection with the imposition of sentence in non-death penalty criminal cases be destroyed 20 years after close of case." Id.; see also 28 U.S.C. § 753(b) (giving the Judicial Conference the authority to promulgate regulations concerning court reporters and their records).

On November 2, 1995, the Pre-Sentence Report ("PSR") was disclosed to Keyser. CR 196, Dkt. No. 229-1, p. 15.  Cisneros testified that Keyser met with him to review the PSR. Dkt. No. 50, p. 22.  The presentence report stated that in accordance with U.S.S.G. § 5G1.3(a), the Court was mandated to order that the instant sentence be served consecutive to the sentence in the drug case, "since the defendant committed the instant offense while serving a term of imprisonment." CR 196, Dkt. No. 229-1, p. 13.[2]

---

[2] The Court notes that it is not entirely clear that § 5G1.3(a) applied to Cisneros or mandated that the sentenced be served consecutive.  Neither Cisneros, nor his co-defendants who went to trial,

Cisneros alleges that during that meeting, Keyser informed him that the PSR was incorrect where it stated that the sentence in the escape case was to run consecutive to the life sentence in the drug case. Dkt. No. 50, p. 22.  Cisneros maintains that Keyser said that the PSR "was wrong and she put a line right on top of the word 'consecutive' and on top of it she wrote out the word 'concurrent.'" Id.

Keyser disputed this version of events.  She was asked "would you have ever taken a PSR and told your client that you don't need to worry about this" even though the PSR says otherwise. Dkt. No. 50, p. 63.  Keyser replied, "No, that would not have happened." Id.

Cisneros did not file any objections to the presentence report.

On November 16, 1995, Cisneros was sentenced to 24 months of incarceration and three years of supervised release for attempting to escape federal custody. CR 181, Dkt. No. 264.  That sentence was ordered to run consecutive to the sentences in the drug case. Id.  As noted earlier, there is no transcript available of the sentencing hearing. CR 181, Dkt. No. 330.

At the evidentiary hearing in July 2019, Cisneros testified that after the sentence was pronounced, he asked Keyser "what happened?" because he had "pled guilty because the sentence was to run concurrent" to the life sentence in the drug case. Dkt. No. 50, p. 24.  Cisneros testified that Keyser replied that "the Judge had misinterpreted the Sentencing Guidelines, that we were going to appeal this." Id.  This conversation allegedly took place in the "bullpen" of the courtroom. Id.  Cisneros thought, based on that conversation, that Keyser was going to file a notice of appeal on his behalf. Id.

---

had been sentenced in the drug case when Cisneros committed the attempted escape offense. Because he was not yet sentenced in the drug case, that case may not have been a "term of imprisonment." See U.S. v. Elmardoudi, 611 F. Supp. 2d 879, 903 (N.D. Iowa 2008), aff'd, 313 F. App'x 923 (8th Cir. 2009) (noting that § 5G1.3(a) is inapplicable to a defendant who committed an offense while on pretrial supervision for another case); but see U.S. v. Contreras-Hernandez, 277 F. Supp. 2d 952, 955 (E.D. Wis. 2003) ("Section 5G1.3(a) was designed to provide increased punishment for those who actively commit crimes while in prison").  Thus, given Cisneros status as a pretrial detainee, who had not yet been sentenced, the applicability of § 5G1.3(a) is not clear. For the reasons set out later, this distinction makes no difference in this case.

Keyser testified that she never handled appeals in her practice, except for one case in state court where she was appointed as appellate counsel. Dkt. No. 50, pp. 60-62.  Keyser testified that she has "never" filed a notice of appeal in a federal criminal case. Id.  Keyser was asked if a federal criminal defense client had "asked you to file an appeal, how would you have handled that?" Id., p. 62.  Keyser replied, "I would have had to ask somebody else how I would go about it because I've never done that." Id.  Keyser added that if a request for an appeal had been made, she "would not have blown that off." Id.

No direct appeal was ever filed.

**B. First Habeas Petition**

On October 28, 1996, Cisneros filed a Rule 60(b) motion, relating to the criminal conviction in the escape case. Cisneros v. U.S., Civil No. 1:96-196, Dkt. No. 1 (J. Vela, presiding).  Cisneros argued that the Court lacked jurisdiction, because the offense did not occur on federal land. Id. On November 12, 1996, the Court issued an order construing this petition as one filed pursuant to § 2255. Id., Dkt. No. 2.  Cisneros was not warned that the Court would be recharacterizing the motion and that it would likely be his only opportunity to collaterally attack his conviction.

On February 24, 1997, the District Court consolidated the original Rule 60(b) in the escape case, which by this point had been recharacterized as a § 2255 petition, with a nearly identical filing relating to the drug conviction. Cisneros v. U.S., Civil No. 1:96-168, Dkt. No. 5 (J. Vela, presiding) (this consolidated case is hereafter referred to as "First Habeas"). On that same day, Magistrate Judge John Black issued a report and recommendation, recommending that the consolidated case be dismissed. Civ. Case 168, Dkt. No. 6.  In that report and recommendation, Judge Black stated that the "thrust" of the petitions "seems to be that there is no such thing as federal criminal jurisdiction, a proposition so absurd as not to warrant discussion." Id.

On March 26, 1997, District Judge Filemon Vela adopted the report and recommendation, dismissing the case. Id., Dkt. No. 10.  On April 8, 1997, Cisneros appealed the dismissal order. Id., Dkt. No. 11.  On September 18, 1997, the District Court denied Cisneros a certificate of appealability. Id, Dkt. No. 14.

On February 20, 1998, the Fifth Circuit sustained the District Court and denied Cisneros a certificate of appealability. Id., Dkt. No. 15.  In that same order, the Fifth Circuit dismissed Cisneros's appeal of his first habeas petition. Id.[3]

### C. Second Habeas Petition

On October 31, 2016, Cisneros filed a habeas petition, in which challenged "his guilty plea, conviction and sentence" in the escape case. Dkt. No. 1.  Cisneros alleged:  (1) that the indictment was legally deficient because Cisneros conspired to escape from a county rather than a federal facility; (2) Keyser was constitutionally ineffective for failing to challenge the legality of the indictment; (3) Keyser was constitutionally ineffective for advising Cisneros to plead guilty on the basis that his sentence would be served concurrently to the drug conviction; and (4) Keyser was ineffective for failing to file a requested notice of appeal. Id.

On February 1, 2017, the Magistrate Judge misconstrued the habeas petition as a Rule 60(b)(4) motion and recommended that it be denied on the basis that it constituted an unauthorized successive collateral attack; it was untimely filed; and, it was legally meritless. Dkt. No. 5.  On March 7, 2017, the District Judge adopted the report and recommendation. Dkt. No. 10.

On March 27, 2017, Cisneros timely filed a notice of appeal. Dkt. No. 13.

On March 1, 2019, the Fifth Circuit vacated and remanded the case to the district court. U.S. v. Cisneros, 755 F. App'x 422 (5th Cir. 2019) (unpubl.).  The Fifth Circuit concluded that, because the first habeas petition in the escape case was improperly recharacterized as a habeas petition — because it did not give Cisneros the opportunity to withdraw or amend the motion — then, the petition "cannot be considered to have become a § 2255 motion" for purposes of the bar against litigating second or successive petitions. Id. at 423.  Accordingly, the Fifth Circuit held that the instant petition was not second or successive. Id.

---

[3] Cisneros filed additional habeas petitions in the First Habeas Petition after this date, but they all related to his drug conviction rather than the escape conviction.  It is the latter conviction which Cisneros attacks in the instant petition.

Additionally, the Fifth Circuit held that this Court should have held an evidentiary hearing on the claims that Cisneros's "trial counsel was ineffective in connection with his guilty plea and for failing to file a notice of appeal." Cisneros, 755 F. App'x at 424. The Fifth Circuit did, however, state that it placed "no limitation on the matters that the district court can consider on remand," and that it had "no view on how it should rule on any issue." Id.

On March 4, 2019, the Court set the matter for an evidentiary hearing and appointed an attorney to serve as Cisneros's habeas counsel. Dkt. No. 25.

On June 12, 2019, Cisneros filed motions to have his attorney removed, based upon "a conflict of interest and irreconcilable differences." Dkt. No. 33. On June 13, 2019, the Court ordered Cisneros to file a brief outlining the exact nature of the problem. Dkt. No. 34.

On June 24, 2019, Cisneros filed the brief, arguing that his attorney's time commitments to other clients created a conflict of interest in this case. Dkt. No. 37.

On that same day, the Court denied the motion to substitute counsel, finding that Cisneros's motions did not raise a valid claim of a conflict of interest. Dkt. No. 38.

On July 1, 2019, Cisneros appealed the denial to the District Judge. Dkt. No. 41. On July 3, 2019, the District Judge denied the motions, finding them to be "not well taken." Dkt. No. 43.

On July 22, 2019, the Court held the evidentiary hearing in this case. Dkt. No. 43., During that hearing, both Cisneros and Keyser testified. Id.

On August 9, 2019, the Court ordered the parties to file post-hearing briefs. Dkt. No. 53. The Court specifically ordered the parties to address "(1) whether the petition was timely filed in this case and (2) in the event the Court finds that it was not timely filed, if there is a factual and legal basis for equitable tolling." Id. The Court further advised Cisneros to "raise any and all possibly meritorious issues in his brief, even if those issues were not explored at the evidentiary hearing. Any issue not raised by Cisneros in the briefing shall be considered to have been waived." Id.

On September 30, 2019, Cisneros timely filed his post-hearing brief. Dkt. No. 55. Cisneros raised two major issues: (1) Keyser was ineffective for advising him to plead guilty; and (2) Keyser was ineffective for failing to file a requested notice of appeal. Id.  In that brief, Cisneros did not address the timeliness issues.

On November 24, 2019, the Government timely filed its post-hearing brief. Dkt. No. 62.  The Government argued that Cisneros's petition was not timely filed and is not supported by the record. Id.

On January 20, 2020, Cisneros timely filed his reply brief. Dkt. No. 68.  Cisneros argues that by vacating and remanding the habeas petition, the Fifth Circuit decided, by necessary implication, that the claims were timely filed. Id.

## II. Applicable Law

### A. Section 2255

Cisneros seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  As relevant here, that section provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he or she were fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

**B. Timeliness**

As relevant here, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as it applies to 28 U.S.C. § 2255, imposes a one-year period of limitation from the date on which judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). This operates as a statute of limitations, rather than a jurisdictional bar, and is subject to equitable tolling. Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).

The doctrine of equitable tolling is reserved for "rare and exceptional circumstances." Id.  A petitioner bears the burden of establishing that equitable tolling is appropriate. U.S. v. Petty, 530 F.3d 361, 365 (5th Cir. 2008). The principle application of equitable tolling is where the petitioner has been actively misled about the cause of action or is "prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). Equitable tolling is applicable only where a petitioner has otherwise diligently pursued his claim. Id. at 403.

**C. Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).  To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Id.

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012).  Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

Prejudice is established by proving "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  If a petitioner fails to prove one prong, it is not necessary to analyze the other one. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994).

### 1. Guilty Plea

A defendant has a Sixth Amendment right to the effective assistance of counsel, "a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012).  The Strickland test of deficient performance and prejudice applies to claims that an attorney was ineffective for advising a client to plead guilty. Id.

As to the deficient performance prong, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163. That does not necessarily require a showing that the defendant would have prevailed at trial or even received a less harsh sentence if they had rejected the plea. Lee v. U.S., — U.S. —, 137 S. Ct. 1958, 1966 (2017).  Rather, the Court should examine whether the defendant, if properly and competently advised, would have made the same decision to accept or reject the plea agreement. Id.

"Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 137 S. Ct. at 1967.

### 2. Notice of Appeal

Once convicted, a federal defendant has an absolute right to file an appeal. U.S. v. Pineda-Arellano, 492 F.3d 624, 627 (5th Cir. 2007) (citing Coppedge v. U.S., 369 U.S. 438, 441 (1962)).  If a defendant informs his attorney that he wishes to file an appeal, the attorney must do so. Roe v. Flores-Ortega, 528 U.S. 470, 483-85 (2000).  If the attorney fails to file a requested notice of appeal, then the defendant has been denied an "entire judicial proceeding," to which he was absolutely entitled. Id., p. 483.  Under such circumstances, the attorney's performance is per se prejudicial to the defendant. Id.

A petition pursuant to § 2255 is the appropriate vehicle through which to challenge an attorney's failure to file a requested notice of appeal. U.S. v. Flores, 380 Fed. App'x. 371, 372 (5th Cir. 2010) (unpubl.) (noting that "such a claim is properly asserted in a § 2255 motion").  The petitioner must establish, by a preponderance of the evidence, that there is a "reasonable probability" that, but for counsel's failure to file a notice of appeal,

the petitioner would have timely appealed. <u>Flores-Ortega</u>, 528 U.S. at 484; <u>U.S. v. Tapp</u>, 491 F.3d 263, 266 (5th Cir. 2007). The Court does not require the defendant to "identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." <u>Id</u>.

## III. Analysis

This case serves as an example as to why there are statutes of limitations in <u>habeas</u> petitions, apart from any concerns of abuse. <u>See</u> <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999) ("Congress enacted AEDPA, in part, to curb abuse of the <u>writ</u> <u>of</u> <u>habeas</u> <u>corpus</u>"). Just the passage of time precludes accurate representation of some facts.

The Court is left to decide the petition based upon events that happened 25 years ago. Transcripts cannot be provided of the re-arraignment and sentencing hearings because the underlying notes and recordings have been legally destroyed. Given the number of clients and limited nature of the relationship between the attorney and client in this case, the defense attorney understandably does not remember every key detail of the case. At the same time, the petitioner recalls only what seems favorable to him. Despite these limitations, the Court is left with deciding the petition based upon the record that currently exists.

In any event, the Court must first consider whether the instant petition was timely filed. The Court will then proceed to examine the substantive merits of his claims. The Court, ultimately, concludes that the petition is untimely filed and unsupported by the record.

### A. Timeliness

In determining whether the petition was timely filed, the Court must consider: (1) if it was filed within the statute of limitations; (2) whether equitable tolling is appropriate based on the Supreme Court's holding in <u>Castro v. U.S.</u>; and (3) whether the Fifth Circuit has implicitly held that Cisneros's petition is timely filed. For the reasons set forth below, the Court concludes that Cisneros's § 2255 petition is untimely filed and should be dismissed on that basis.

### 1. Statute of Limitations

Under the statute of limitations found at 28 U.S.C. § 2255(f), it seems clear that the petition was untimely filed.  Judgment in this case was entered on November 16, 1995. CR Dkt. No. 264.  On December 1, 1995, Cisneros's deadline to file a notice of direct appeal expired. FED. R. APP. P. 4(b)(1)(A), 26(a)(2).  Cisneros's conviction became final on that date. U.S. v. Plascencia, 537 F.3d 385, 388 (5th Cir. 2008).

On April 24, 1996, the AEDPA was signed into law and created a one-year statute of limitations for filing § 2255 petitions. U.S. v. Flores, 135 F.3d 1000, 1001 (5th Cir. 1998).  The Court must determine which of the statute's provisions apply to start the limitations period.

The limitations period runs "from the latest" of the following:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

If the limitations period begins to run on "the date on which the judgment of conviction becomes final," then the limitations period expired on April 24, 1997.  This conclusion follows from the fact that Cisneros's conviction became final on December 1, 1995, when the time for filing a direct appeal expired. U.S. v. Plascencia, 537 F.3d 385, 388 (5th Cir. 2008).  Because that date pre-dates the effective date of the AEDPA, the "one year, commencing on April 24, 1996, presumptively constitutes a reasonable time for those prisoners whose convictions had become final prior to the enactment of the AEDPA to file

for relief under 28 U.S.C. § 2255." <u>Flores,</u> at 1006. Thus, Cisneros had until April 24, 1997, to timely file a § 2255 petition under § 2255(f)(1).

Section 2255(f)(2) would appear to be inapplicable in this case; there is no evidence in the record showing that Cisneros "was prevented from making a motion by such governmental action."

As to § 2255(f)(3), Cisneros is not relying on a newly recognized constitutional right as the substantive basis for relief. The "right asserted" in § 2255(f)(3) refers to "the substantive right that forms the basis for the § 2255 motion, rather than a procedural right related to the timing or manner in which the § 2255 motion is filed." <u>Outler v. U.S.</u>, 485 F.3d 1273, 1280 (11th Cir. 2007). The claims of ineffective assistance of counsel in this case are not newly recognized. The Supreme Court recognized the right of effective assistance of counsel in relation to guilty pleas over 30 years ago. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). Moreover, the Supreme Court recognized the right to effective assistance of counsel in filing a requested notice of appeal on February 23, 2000. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000). Thus, giving Cisneros every benefit of the doubt, his claim regarding the failure to file the requested notice of appeal should have been filed no later than February 23, 2001, one year after <u>Flores-Ortega</u> was decided.

As for § 2255(f)(4), the factual predicates for Cisneros's claims could have been discovered long ago. As to his claim that his attorney was constitutionally ineffective for advising him to plead guilty to guarantee a concurrent sentence, Cisneros was aware that he received a consecutive sentence on November 16, 1995, when the sentence was pronounced.

As to his claim that Keyser failed to file a requested notice of appeal, the Court notes that § 2255(f)(4) is only applicable if the petitioner exercised due diligence in seeking out the underlying factual predicate. <u>U.S. v. Rodriguez</u>, 858 F.3d 960, 962 (5th Cir. 2017). At the evidentiary hearing, Cisneros never identified a date when he finally learned that no appeal had been filed. Cisneros further admitted that there is no evidence in the record that he ever wrote to the District Court or the Fifth Circuit seeking information on the status of his requested appeal. Dkt. No. 50, pp. 50-51.

The underlying facts supporting Cisneros's claim — that Keyser had failed to file a requested notice of appeal — "could have been discovered through the exercise of due diligence" within months of his sentencing. Rodriguez, 858 F.3d at 963.  The fact that Keyser never contacted him about the status of the appeal does not absolve Cisneros from his statutory duty of diligence. See Manning v. Epps, 688 F.3d 177, 185 n. 2 (5th Cir. 2012) ("attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes, but does not, by itself, excuse the petitioner from his duty of diligence").  Given that Cisneros took no action to discover the underlying factual predicates of this claim, especially in view of the numerous years, does not allow him the benefit of an extended statute of limitations under § 2255(f)(4).

In sum, the statute permits Cisneros to file from the latest date afforded by § 2255(f)(1)-(4).  Under the facts in this case, his claim that his attorney failed to file a requested notice of appeal-under Flores-Ortega and § 2255(f)(3)-should have been filed by February 23, 2001.  His claim that his attorney incorrectly advised him to plead guilty should have been filed no later than April 24, 1997, under § 2255(f)(1). See Zack v. Tucker, 704 F.3d 917, 926 (11th Cir. 2013) ("the statute of limitations in AEDPA applies on a claim-by-claim basis in a multiple trigger date case").  Cisneros did not file his petition until October 31, 2016, long after these deadlines had passed.  For those reasons, his petition is not timely filed.  Nevertheless, the Court must still consider whether equitable tolling is appropriate and saves the failure to timely file.

### 2. Equitable Tolling & Castro

Simply stated, there is no basis in the record for equitable tolling.  Cisneros argues that his petition should be considered timely filed, because the District Court's "improper sua sponte recharacterization of his Rule 60(b)(6) motion [in 1997], . . . is what prevented him from timely asserting all of his § 2255 claims in 1996." Dkt. No. 1, p. 5.

It wasn't until 2003 that the Supreme Court held that district courts cannot recharacterize a motion as a § 2255 petition without first warning the petitioner that it was doing so and giving the petitioner the chance to amend or withdraw the petition. Castro v. U.S., 540 U.S. 375 (2003).  If the district court adjudicated a recharacterized § 2255 petition

without giving that warning, the recharacterized petition "will not count as a § 2255 motion for purposes of applying § 2255's 'second or successive' provision." Castro, 540 U.S. at 377. Stated differently, an improperly recharacterized petition will not serve as a statutory bar to a subsequently filed petition. Id.

As applied to this case, the holding in Castro means that the 1997 petition — the Rule 60(b) motion that was recharacterized as a § 2255 petition — does not bar the Court from considering this petition. In other words, § 2255(h) ensures that a petitioner typically only gets one bite at the proverbial habeas apple. An improperly recharacterized motion is not considered an actual bite at that apple.

Nothing in Castro, however, indicates that it changes whether a petition is considered timely under § 2255(f). Courts have held that Castro does not impact the timeliness of a petition. The Eleventh Circuit has concluded that Castro warnings have to be given, even for recharacterized petitions that are untimely on their face under § 2255(f)(1). Gooden v. U.S., 627 F.3d 846 (11th Cir. 2010). Their reasoning was that

> while a re-characterized motion might be untimely under § 2255(f)(1), it is possible for future events to render a subsequent § 2255 motion timely under § 2255(f)(2)-(4). As a result, a pro se litigant, if afforded Castro notice, might decide to withdraw a re-characterized § 2255 motion and wait for future events to re-start the statute of limitations period. If a pro se litigant is not afforded such notice, however, he or she might very well remain unaware of this option. Castro forbids such ignorance.

Gooden, 627 F.3d at 848. Accordingly, it would seem, that Castro does not alter the analysis as to whether a petition is timely under § 2255(f).

Furthermore, equitable tolling requires that Cisneros pursue his rights diligently. U.S. v. Wheaten, 826 F.3d 843, 851 (5th Cir. 2016). Cisneros is required to show that he exercised "reasonable diligence[.]" He is not required, however, to prove "maximum feasible diligence." Holland v. Fla., 560 U.S. 631, 653 (2010). Nevertheless, under any standard, Cisneros failed to exercise the required diligence.

Castro was decided in 2003. Castro, 540 U.S. 375. Yet, Cisneros never filed any petition seeking review of his conviction and sentence until 2016. Nothing has changed in

the interim that would restart the timeliness clock. Indeed, Cisneros could have filed a petition immediately after <u>Castro</u> was decided, making the same substantive and procedural claims that he made in this case. Instead, Cisneros waited an additional 13 years after <u>Castro</u> was issued to finally collaterally attack his conviction and sentence.

There is no evidence in the record that Cisneros ever wrote to this Court, or to the Fifth Circuit, seeking an update on the status of his requested appeal. <u>Cf</u>. <u>Holland</u>, 560 U.S. at 653 (noting that diligence was shown when the defendant repeatedly contacted the courts and clerk's office to seek additional information). If Cisneros actually instructed his attorney to file a direct appeal, he made no effort to follow up on those efforts. The Fifth Circuit has concluded that "petitioners seeking to establish due diligence must exercise diligence even when they receive inadequate legal representation." <u>Palacios v. Stephens</u>, 723 F.3d 600, 607 (5th Cir. 2013) (quoting <u>Manning v. Epps</u>, 688 F.3d 177, 185 (5th Cir. 2012)).

In short, Cisneros has not demonstrated reasonable diligence; for this reason, the Court does not need to reach the question of whether "rare and exceptional" circumstances are present. <u>U.S. v. Perkins</u>, 481 F. App'x 114, 119 (5th Cir. 2012). No matter the standard applied, equitable tolling is not warranted in this case.

### 3. Mandate Rule

The Fifth Circuit remanded the case to this Court, after Cisneros's petition was initially denied. Dkt. Nos. 28, 29. The Court must examine how that remand impacts the timeliness of the petition.

"An appellate court decision rendered at one stage of a case constitutes the 'law of the case' in all succeeding stages." <u>Knotts v. U.S.</u>, 893 F.2d 758, 761 (5th Cir. 1990). "Where, as here, further proceedings in the district court are specified in the mandate of the Court of Appeals, the district court is limited to holding such as are directed." <u>Crowe v. Smith</u>, 261 F.3d 558, 562 (5th Cir. 2001) (cleaned up).[4] The mandate rule "extends only

---

[4] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation

to matters decided expressly or by necessary implication." <u>DeJoria v. Maghreb Petroleum Expl., S.A.</u>, 935 F.3d 381, 394 (5th Cir. 2019), as revised (Aug. 16, 2019). An issue is decided by necessary implication when the disposition of that issue is a "necessary predicate to the ability to address the issue or issues specifically discussed in the appellate court's opinion." <u>Id</u>. (cleaned up).

In the original report and recommendation — incorrectly construing the petition as a Rule 60(b) motion — this Court stated that (1) the motion was a successive habeas petition; (2) that it was untimely filed; and (3) that Cisneros was not entitled to relief on the merits. Dkt. No. 5. The District Judge adopted the report and recommendation in full. Dkt. No. 10.

In the Fifth Circuit's opinion, it addressed (1) how the application of <u>Castro</u> meant that the instant petition was not successive; and, (2) that an evidentiary hearing was necessary to resolve the claims of ineffective assistance of counsel. Dkt. No. 29. The Fifth Circuit made no findings about the timeliness of the petition.

While the Fifth Circuit did not address the timeliness of the petition, it expressly stated that it placed "<u>no limitation</u> on the matters that the district court can consider on remand, and we intimate no view on how it should rule on any issue." (emphasis added). Dkt. No. 29, p. 4. Cisneros argues that because the Fifth Circuit remanded the case on the ineffective assistance of counsel issues, the mandate implied "that those claims are live and should proceed." Dkt. No. 68, pp. 3-4. This Court does not read the Fifth Circuit's opinion to hold — either expressly or by implication — that the claims are timely filed.

By placing no limitations on the matters that the Court could consider, the Fifth Circuit ensured that the Court was to consider any issue before it, including timeliness. This "no limitation" language has been used by the Fifth Circuit in other cases. <u>Sharbutt v. Vasquez</u>, 669 F. App'x 707, 708 (5th Cir. 2016); <u>Lemoine v. Wolfe</u>, 812 F.3d 477, 481 (5th Cir. 2016); <u>Santillana v. Upton</u>, 846 F.3d 779, 785 (5th Cir. 2017); <u>Wheater v. Shaw</u>,

---

more readable, but has not altered the substance of the quotation. <u>Na v. Gillespie</u>, 2017 WL 5956773, at *3, 234 Md. App. 742, 174 A.3d 493 (Md. Ct. Spec. App. Dec. 1, 2017); <u>see also</u> <u>Flores-Abarca v. Barr</u>, 937 F.3d 473, 479-81 (5th Cir. 2019) (using "cleaned up").

719 F. App'x 367, 371 (5th Cir. 2018); <u>Garcia v. Wal-Mart Stores Texas, L.L.C.</u>, 893 F.3d 278, 282 (5th Cir. 2018).

The Court has found no case law interpreting how the scope of the mandate is altered by the "no limitation" language. What is clear is that this Court has "no power or authority to deviate from the mandate issued by an appellate court." <u>Hall v. White, Getgey, Meyer Co., LPA</u>, 465 F.3d 587, 592 (5th Cir. 2006) (quoting <u>Briggs v. Pennsylvania R.R. Co.</u>, 334 U.S. 304, 306 (1948)). The Court interprets the Fifth Circuit's language to mean exactly what it says: there have been no legal limitations or factual findings made by the Fifth Circuit in this case that would limit what the Court can consider or how it may rule. If the Court has incorrectly interpreted this mandate, then the Fifth Circuit will clarify it. <u>Ins. Co. of N. Am. v. Bd. of Comm'rs of Port of New Orleans</u>, 524 F. App'x 103, 107 (5th Cir. 2013) (noting that the appellate court can clarify a mandate if the district court has reasonable difficulties in applying it).

Even if the Court has incorrectly interpreted the Fifth Circuit's mandate and the timeliness issue has been foreclosed in Cisneros's favor, he is not entitled to relief. As discussed further below, his substantive claims are unsupported by the record.

### B. Ineffective Assistance of Counsel

Cisneros alleges that Keyser was ineffective for: (1) advising him to plead guilty to guarantee a concurrent sentence; and (2) not filing a requested notice of appeal. After reviewing the record, including hearing testimony and observing the witness's demeanor at the evidentiary hearing, the Court concludes that neither of these claims are supported by the record.

#### 1. Guilty Plea

Cisneros alleges that, but for Keyser's allegedly incorrect advice — that he would receive a concurrent sentence — he would not have pled guilty, and, instead, would have insisted on a trial. The Court finds that this claim is not supported by the record.

In judging claims of ineffective assistance revolving around a guilty plea, the Court applies the traditional two-part <u>Strickland</u> test of deficient performance and prejudice. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). In judging the prejudice prong, the Court must look

to objective evidence as to whether the defendant would have chosen to plead guilty if they had been properly advised of the consequences of the plea. Lee v. U.S., — U.S. —, 137 S. Ct. 1958, 1966 (2017).

In Lee, the petitioner was a lawful permanent resident who unknowingly pled guilty to a charge that would result in his mandatory deportation. Lee, 137 S. Ct. at 1962. Given that "deportation was the determinative issue in Lee's decision whether to accept the plea deal," he was prejudiced when he unknowingly pled guilty to a charge that carried mandatory deportation. Lee, 137 S. Ct. at 1967. Thus, the question is not whether Cisneros would have fared better at trial, but whether he would have made the same decision if he had been properly apprised of the facts and law. Id.

In this case, Cisneros and Keyser dispute what constituted "the determinative issue" in deciding whether to accept a plea agreement. It cannot be seriously disputed that: (1) Cisneros's sentence in the escape case was possibly an academic consideration, given that he had already been sentenced to life in prison in the drug case; and (2) that there was overwhelming evidence of Cisneros's guilt in the escape case. Several of his co-defendants had already entered into a plea agreement with the Government, agreeing to testify against Cisneros. CR 196, Dkt. Nos. 179, 180, 181, 182, 183, 184. As part of the conspiracy, Cisneros's mother paid a Cameron County sheriff's deputy $200,000 to free her sons. CR 196, Dkt. No. 132. In the escape case, Cisneros personally spoke to and "solicited [the] assistance" of the deputy to further the escape. Id, p. 5. Faced with the testimony of his co-conspirators, as well as the deputy, Cisneros had no realistic hope of success at trial. Thus, the Court must focus on why Cisneros would choose to accept the plea agreement — i.e. determining his chief motivating concern.

According to Cisneros, his overriding concern was avoiding a consecutive sentence. Dkt. No. 50, pp. 19-20. This was his concern, because if his drug conviction, which was on appeal at the time,[5] was overturned, it would be the difference between leaving prison right away or having to fully complete the escape sentence. Dkt. No. 50, pp. 19-20.

---

[5] The drug conviction and sentence were affirmed on direct appeal. U.S. v. Cisneros, 112 F.3d 1272 (5th Cir. 1997).

Cisneros alleged that he was motivated by Keyser's promise that he would receive a concurrent sentence of 24 months. Dkt. No. 50, pp. 18-19.

The plea agreement, which Cisneros signed, contains no promise of a specific sentence or whether the sentence would be concurrent or consecutive to the life sentence in the drug case. CR 196, Dkt. No. 204. The Government merely agreed to "recommend the low end of the Sentencing Guideline Range and to dismiss the superseding indictment[6] and agree to [Defendant's] acceptance of responsibility." Id, pp. 1-2. Not only were no specific promises made as to the length of sentence and its consecutive or concurrent nature, there were no promises by the Government to make specific recommendations to the Court. Id.

Keyser flatly denied ever promising Cisneros a specific sentence. Dkt. No. 50, p. 58. She stated that she never promised a client a specific sentence unless it "was a predetermined plea" in a state court case, where the sentence is agreed to in the plea agreement. Id. She was asked if she tried to give Cisneros "her best guess" at his sentence. Id., pp. 58-59. Keyser replied that she did not, explaining further that

> My practice would have been to let them know what the range was and that the judge would make the decision. It's always been my practice not to make assumptions or promises or speculations or in any way communicate with a client in a way that could be confusing or misleading because they -- they're in a stressful period and they kind of have a tendency to hear what they want to hear and filter out what they don't want to hear.

Dkt. No. 50, p. 59.

According to Keyser, Cisneros's overriding concern "was to craft an agreement that best affected and protected his mother." Id., pp. 72-74.

---

[6] The record does not clearly indicate why the dismissal of the superseding indictment was important to Cisneros. In both the original and superseding indictment, he faced a single count of conspiracy to escape. CR 196, Dkt. Nos. 1, 132. The Court does note, in passing, that the dismissal of the superseding indictment was a part of the written plea agreements for Cisneros, his brother and his mother, but did not appear to be a part of the written plea agreements for the remaining defendants. CR 196, Dkt. Nos. 204, 207, 245.

Keyser stated that, in general, a willingness to protect a co-defendant changes a client's bargaining position. Dkt. No. 50, pp. 75-76. She explained that "if you have a co-defendant that you don't care about and you have information that you can trade to put yourself in a better position, then you certainly do that." Id. Conversely, "if you have a co-defendant that you do care about, then that does change the conversation a bit and you lose a little of your negotiating perspective." Id. In other words, because Cisneros's primary concern was protecting his mother, Keyser lacked leverage to negotiate a more favorable plea agreement.

When asked on cross-examination, if it was "true that you wanted to make a deal hoping that the Government would go lighter," on his wife and mother's case, Cisneros replied, "I don't remember." Dkt. No. 50, p. 30. The Government followed up by pointing out that Cisneros remembers "lots of conversations and exact words that were said," and then asked "but you don't remember that?" Id. Cisneros replied, "maybe." Id.

After listening to this testimony, watching body language and examining the record, the Court does not find Cisneros's recollection of his overriding concern to be credible, but does credit Keyser's. The Court does not find it plausible that Cisneros does not remember whether he was motivated by protecting his wife and mother. Cisneros remembers the exact paragraph number in the PSR that deals with the consecutive nature of his sentences, but when asked if he was motivated to protect his wife and mother, his memory is shaky. Dkt. No. 50, pp. 22, 30. In other words, his memory of events that help his case is extraordinarily vivid, but when questioned about events that cut against his case, his memories are lost to the fog of time. The Court found his testimony on this point to be entirely self-serving.

The Court further notes that Cisneros and his mother were both scheduled to plead guilty on the same day, September 22, 1995. CR 196, Dkt. Nos. 198, 203. His mother's re-arraignment had to be rescheduled because she "fell ill" during the hearing. CR 196, Dkt. No. 198. This timing lends credence to Keyser's recollection that Cisneros was motivated to plead guilty to protect his mother. In fact, he and his mother apparently agreed to plea deals with the Government at around the same time. CR 196, Dkt. Nos. 198, 203.

As part of his plea deal, Cisneros agreed to testify in any court hearing as required by the Government; by waiting until his mother had also agreed to plead guilty, he avoided the possibility of having to testify against her at trial.[7]  This circumstantial evidence buttresses Keyser's testimony that Cisneros was motivated to protect his mother when he pled guilty.

The Court does not find Cisneros's claim that Keyser promised him a 24-month concurrent sentence to be credible.  It is not supported by any evidence in the plea agreement; that document contained no promises about the length or nature of the sentence. The Court found Keyser's testimony about her practice of not guaranteeing or even predicting sentences to be highly credible, as it is consistent with the practice of most experienced criminal defense practitioners.

Simply put, the Court does not believe that Cisneros's motivation in pleading guilty was to ensure a shorter and concurrent sentence.  The Court credits Keyser's testimony that Cisneros's view was that "he already had a life sentence and so there wasn't a whole lot of negative things that could happen to him, but he was very concerned about his mother." Dkt. No. 50, pp. 73-74.  As such, Keyser represented Cisneros in a way that represented his best interests, as Cisneros — at the time — believed them to be.  Cisneros did not plead guilty until his mother had also reached a plea agreement with the Government, ensuring that he was not required to testify against her.  Keyser's performance was not deficient, nor was it prejudicial to his case.  The claim of ineffective assistance of counsel for advising Cisneros to plead guilty should be denied.

### 2. Notice of Appeal

Cisneros alleges that Keyser was ineffective for failing to file a requested notice of appeal.  After reviewing the record and listening to the testimony, the Court concludes that this argument is not supported by the facts.

As noted earlier, once convicted, a federal defendant has an absolute right to file an appeal. U.S. v. Pineda-Arrellano, 492 F.3d 624, 627 (5th Cir. 2007) (citing Coppedge v.

---

[7]  The Court notes that while the Government does not typically have family members testify against each other, it has an exception for instances when the family members acted as co-conspirators. U.S. Dept. of Justice, U.S. Attorneys' Manual § 9-23.211.

U.S., 369 U.S. 438, 441 (1962)).  If a defendant informs his attorney that he wishes to file an appeal, the attorney must do so.  Roe v. Flores-Ortega, 528 U.S. 470, 483-85 (2000).  Where the attorney fails to file a requested notice of appeal, the attorney's performance is per se prejudicial to the defendant. Id. p. 483-87.  Thus, the determinative question is whether Cisneros instructed Keyser to file an appeal.

Cisneros alleges that because the concurrent sentence was the motivating force behind his decision to plead guilty, he was surprised when he was given a consecutive sentence. Dkt. No. 50, pp. 23-24.  After the sentencing hearing concluded, he spoke with Keyser "in the bullpen that they have in Court." Id.  After he asked Keyser why the sentence was consecutive, he alleges that she responded, "that the Judge had misinterpreted the Sentencing Guidelines, that we were going to appeal this." Id.

Keyser maintained that she had no recollection of any conversations about appealing the sentence. Dkt. No. 50, pp. 60-64.  If Cisneros had asked Keyser about an appeal, she would not have promised to appeal "because I don't do appeals ever." Id., p. 61.  Keyser admitted that she would not have known what a notice of appeal looks like and would have had to ask another lawyer about how to file one because she had never filed one herself. Id., p. 62.  She did add that she "would not have blown that off," if Cisneros had requested an appeal. Id.

Consistent with the Court's earlier finding — that Cisneros was not largely motivated to plead guilty to avoid a consecutive sentence — the Court does not find Cisneros's claim, that Keyser was to file an appeal in his escape case, to be credible.  The Court finds Keyser's recollection, limited as it is, to be more credible.  Given that Keyser had never handled a federal criminal appeal or even a federal notice of appeal, she would have had to reach out to a colleague to learn how to perfect an appeal in this case. Dkt. No. 50, p. 62.  Indeed, no evidence was introduced indicating that Keyser ever asked anyone about the process for filing an appeal. The fact that she did not reach out to a colleague raises the clear inference that Cisneros did not request that an appeal be filed.

Furthermore, Cisneros never claimed that Keyser failed to file an appeal, until the petition in this case in 2016. Dkt. No. 1.  Cisneros filed three documents in his escape case

in the first two years after he was sentenced: (1) the recharacterized § 2255; (2) a motion for contempt against the Government; and (3) a motion for entry of default against the Government. CR 196, Dkt. Nos. 281, 284, 292.  Cisneros made no allegations — in any of those documents — that his case was currently on appeal or that he had requested that an appeal be filed.  There is no record of Cisneros contacting this Court or the Fifth Circuit about the status of any appeal.  Indeed, there is no contemporaneous evidence that Cisneros believed that an appeal had been filed on his behalf, which "can be likened to the dog that did not bark." Chisom v. Roemer, 501 U.S. 380, 396, n. 23 (1991) (citing A. Doyle, Silver Blaze, in The Complete Sherlock Holmes 335 (1927)).

Between his drug and escape cases, Cisneros has proven to be a prolific and tenacious litigant.  It is notable, then, that Cisneros never inquired about the status of the appeal and never mentioned any appeal until 2016.

Ultimately, this claim turns on the credibility of Cisneros and Keyser's testimony. The Court finds that Keyser's testimony about the appeal was highly credible.  Given that she did not handle appeals — and was quite emphatic about her unwillingness to even consider handling appeals — it is highly unlikely that Keyser would have promised to file an appeal on his behalf.

As previously noted, Cisneros must establish, by a preponderance of the evidence, that there is a "reasonable probability" that, but for counsel's failure to file a notice of appeal, the petitioner would have timely appealed. Flores-Ortega, 528 U.S. at 484.  The preponderance of the evidence standard requires Cisneros to show that it "is more likely than not," that he requested the notice of appeal be filed. Sealed Appellee 1 v. Sealed Appellant 1, 767 F.3d 418, 425 n. 26 (5th Cir. 2013); see also U.S. v. Myers, 772 F.3d 213, 220 (5th Cir. 2014) (noting that preponderance of the evidence standard requires a party to prove the evidence by at least "fifty-one percent") (citing U.S. v. Diaz, 344 Fed. App'x. 36, 43 (5th Cir. 2009)).

Based upon what was demonstrated in court at the July 2019 hearing, the Court is not convinced that it is more likely than not that Cisneros requested that a notice of appeal be filed.  At best, the Court might find Cisneros and Keyser to be equally credible, given

the lack of supporting evidence.  Even in this scenario, Cisneros is not entitled to relief.
See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 137 n. 9 (1997) (under the
preponderance standard, "when the evidence is equally balanced," the party who has the
burden of persuasion "must lose.").

Accordingly, the Court should deny the claim that Keyser was ineffective for failing
to file a requested notice of appeal.

## IV. Recommendation

It is recommended that the Petitioner Juan Gabriel Cisneros's Motion to Vacate, Set
Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be dismissed as
untimely filed, or alternatively, denied as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a
petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. §
2253(a), (c)(1).  A petitioner may receive a COA only if he makes a "substantial showing
of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322,
336 (2003).  To satisfy this standard, a petitioner must demonstrate that jurists of reason
could disagree with the court's resolution of his constitutional claims or that jurists could
conclude that the issues presented are adequate to deserve encouragement to proceed
further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006).  A district court
may sua sponte rule on a COA, because the court that denies relief to a petitioner is in the
best position to determine whether the petitioner has made a substantial showing of a denial
of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895,
898 (5th Cir. 2000).

After reviewing Cisneros's § 2255 motion and the applicable Fifth Circuit
precedent, it is recommended that a certificate of appealability should be denied.  Although
Cisneros's § 2255 motion raises issues that the Court has carefully considered, he fails to
make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**B. Notice to Parties**

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on March 13, 2020.

_____
Ronald G. Morgan
United States Magistrate Judge